**AVCO CORPORATION, Plaintiff-Appellant,**

v.

**AERO LODGE NO. 735, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS et al., Defendants-Appellees.**

No. 17207.

United States Court of Appeals
Sixth Circuit.

May 2, 1967.

338

Don A. Banta, Chicago, Ill. (Francis J. Naphin, Warren G. Sullivan, Chicago, Ill., William Waller, Robert G. McCullough, Nashville, Tenn., on the brief), for appellant.

Cecil D. Branstetter, Nashville, Tenn. (Carroll D. Kilgore, Nashville, Tenn., on the brief), for appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and BATTISTI,* District Judge.

CELEBREZZE, Circuit Judge.

The question presented on this appeal is whether an action seeking to enjoin a breach of a no-strike provision in a collective bargaining agreement may be removed from State to Federal Court.

Avco Corporation (Avco) is a Delaware Corporation, qualified to do business in Tennessee. Avco is engaged in interstate commerce, and its Tennessee manufacturing and assembly plant doing

---

* Honorable Frank J. Battisti, United States District Judge, Northern District of Ohio, Eastern Division, sitting by designation.

a substantial amount of aircraft structures work has a direct impact on the national defense. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers, (Union) is the sole collective bargaining agent for approximately 2,000 production and maintenance employees of Avco's manufacturing plant in Nashville, Tennessee.

A series of work stoppages at the Nashville plant culminated in a plant-wide strike on October 15, 1965. The collective bargaining ageement then in force provided that there would be no work stoppages or strikes, and the bargaining contract further provided for a method of settling grievances, including a provision for binding arbitration.

Avco instituted suit in the Chancery Court for Davidson County, Tennessee, seeking to enjoin the Union from striking, and asking also for general relief. The complaint did not involve any allegation of violence in connection with the strike, and hence no foundation for the employment of state injunctive power under the police power doctrine. After the Chancery Court issued a temporary injunction the Union filed a petition for removal of the cause to the United States District Court. Upon removal, the Union filed a motion to dissolve the temporary injunction, and to dismiss the action upon the alleged ground that the complaint sought, and Avco had been granted, an injunction which the District Court had no power to issue or maintain by reason of the restrictions of the Norris-La Guardia Act. Avco moved to remand the action to the State Court upon the ground that the complaint was not founded on a claim arising under the laws of the United States within the meaning of the Removal Act, but instead was founded upon breach of contract arising under State law. Avco further maintained that the District Court, by virtue of the Norris-La Guardia Act, did not have original jurisdiction within

the meaning of the Removal Act. The District Court dissolved the temporary injunction, but refused to dismiss the action. The motion to remand was denied. Avco appeals.

The question presented here is identical to the question presented in American Dredging Co. v. Local 25, Marine Division, International Union of Operating Engineers, 338 F.2d 837 (C.A.3, 1964), cert. den. 380 U.S. 935, 85 S.Ct. 941, 13 L.Ed.2d 822 (1965). In American Dredging, supra, the Court remanded the case to the State Court on the ground that the action, based solely on a State created right, did not come within 28 U.S.C., Section 1441, which permits removal of a civil action to a Federal Court which has jurisdiction under a law of the United States. We decline to follow American Dredging, and affirm the judgment of the District Court.

This action was removed to Federal Court pursuant to the provisions of 28 U.S.C., Section 1441(b) which provides, in part:

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

Avco maintains that this case does not come within the scope of this removal authorization because its claim does not arise under the laws of the United States and further that Section 4 of the Norris-La Guardia Act, 29 U.S.C., Section 104, withdraws jurisdiction from Federal Courts to grant the injunctive relief sought in the complaint.

We cannot accept the basic premise of Avco's argument that its action is based solely upon a State created right. Section 301 of the Labor Management Relations Act, 29 U.S.C., Section 185,[1]

1. 29 U.S.C.A., Section 185(a)—Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations,

confers jurisdiction upon the District Court without regard to diversity of citizenship or jurisdictional amount to enforce collective bargaining agreements in industries affecting interstate commerce. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), held that Federal substantive law preemptively applies in suits under Section 301, the Court stating:

> "The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * *
>
> "Federal interpretation of the federal law will govern, not state law. Cf. Jerome v. United States, 318 U.S. 101, 104 [63 S.Ct. 483, 87 L.Ed. 640]. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy (Citations omitted). Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights."

This enunciated principle was reaffirmed in Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, p. 103, 82 S.Ct. 571, p. 576, 7 L.Ed.2d 593 (1962):

> "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by § 301(a) to be decided according to the precepts of federal labor policy."

 Thus, according to the findings of the Supreme Court, as enunciated in *Lincoln Mills,* supra, and expanded in *Lucas Flour Co.,* supra, all rights and

claims arising from a collective bargaining agreement in an industry affecting interstate commerce arise under Federal law. State law does not exist as an independent source of private rights to enforce collective bargaining contracts. While State courts may have concurrent jurisdiction, they are bound to apply Federal law. Charles Dowd Box Company v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). The force of Federal preemption in this area of labor law cannot be avoided by failing to mention Section 301 in the complaint.

In view of the express finding in *Lucas Flour,* supra, Avco's contention that its action is founded upon a breach of contract arising under State law is without merit. The action is based upon a violation of a no-strike agreement arising out of a collective bargaining agreement in an industry affecting interstate commerce. Had the action remained in the State Court, the State Court, under the doctrine of *Lincoln Mills* and *Lucas Flour,* was bound to apply Federal and not State law.

Finding that Avco's claim is one arising under the laws of the United States, we next consider whether Section 4 of the Norris-La Guardia Act, 29 U.S.C.A., Section 104, withdrew jurisdiction from Federal Courts.

Section 4 of the Norris-La Guardia Act provides, in part:

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such disputes (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(A) Ceasing or refusing to perform any work or to remain in any relation of employment: * * *."

---

may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount

in controversy or without regard to the citizenship of the parties.

We do not think "jurisdiction" has the same meaning in Section 4 of the Norris-La Guardia Act as it does in Section 301 of the Labor Management Relations Act. The Norris-La Guardia Act does not deny to Federal Courts jurisdiction over the parties or the subject matter. The Federal Courts are denied the power to grant injunctive relief under the provision of Section 4 of the Act, and permitted to grant injunctive relief under the provision of Section 7 of the Act. The Norris-La Guardia Act does not limit the power of the Court to entertain the suit. As stated by the District Court, "the mere fact that a prohibited labor injunction is among the remedies sought does not mean that a District Court lacks original jurisdiction over the cause of action for the purpose of awarding other relief."

The loss of the power to grant certain equitable remedies does not mean Federal Courts have lost jurisdiction over the subject matter or parties.

In Pusey and Jones Co. v. Hanssen, 261 U.S. 491, 500, 43 S.Ct. 454, 457, 67 L.Ed. 763 (1923), Mr. Justice Brandeis said:

"The objection that the bill does not make a case properly cognizable in a court of equity does not go to its jurisdiction as a federal court (citations omitted). The objection may * * * be taken by the court of its own motion. But, unlike lack of jurisdiction as a federal court, (citations omitted) lack of equity jurisdiction (if not objected to by a defendant) may be ignored by the court, in cases where the subject-matter of the suit is of a class of which a court of equity has jurisdiction."

Mr. Justice Stone said in DiGiovanni v. Camden Fire Insurance Assoc., 296 U.S. 64, 69, 56 S.Ct. 1, 3, 80 L.Ed. 47 (1935):

"Whether a suitor is entitled to equitable relief in the federal courts, other jurisdictional requirements being satisfied, is strictly not a question of jurisdiction in the sense of the power of a federal court to act. It is a question only of the merits; whether the case is one for the peculiar type of relief which a court of equity is competent to give."

Whether "jurisdiction" in Section 4 means equity jurisdiction or jurisdiction over the subject matter has been fully considered by Professor Chafee, Some Problems of Equity, Chapters 8 and 9 (1950). In commenting on congressional limitation on federal judicial power by the Norris-La Guardia Act, Professor Chafee said:

"Everybody in this four-sided row among the Justices took it for granted that 'no court * * * shall have jurisdiction * * *' meant 'no court shall have power * * *' yet clearly the District Judge had jurisdiction over the parties, and * * * he also had jurisdiction over the subject matter. The District Court did have power to decide labor disputes, and it could at least award damages for acts which, the statute said, were not to be enjoined. This being so, nothing further was required to give that Court power to act, which includes power to act wrongly * * *. In short, the [Norris-La Guardia] Act says, in effect, 'no court shall have equity jurisdiction * * *', and lack of equity jurisdiction * * * is not lack of power." (Page 368).

Under Section 7 of the Norris-La Guardia Act, Federal Courts may grant injunctions under certain enumerated circumstances. Professor Chafee cogently argued that if Federal Courts have no subject matter jurisdiction, then how can the Court sit without jurisdiction until certain facts are proved and then decide whether it has the power to act? The answer is, jurisdiction attaches from the beginning or not at all.

The strike against Avco gave rise to a single cause of action for which any number of different remedies were available. See American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), where the Supreme Court defined cause of action as being predicated on a single wrong to plaintiff

for which relief is sought. While the injunctive remedy has played an important part in the history of labor law, such close relationship between this effective remedy and the cause of action does not mean the two are coextensive. Here the complaint stated a single cause of action. The relief prayed for was an injunction and general relief. If Avco had not asked for general relief, it would have been entitled to any appropriate relief, other than an injunction, under Rule 54 (c), Federal Rules of Civil Procedure.[2] Under the Rules of Civil Procedure, federal courts in their discretion may grant relief of a kind not requested in the pleading of either party. Mercury Oil Refining Co. v. Oil Workers Int. Union, CIO, 10 Cir., 187 F.2d 980.

In Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Supreme Court held that Section 301 had not so narrowed the provisions of Section 4 as to permit injunctions growing out of a labor dispute. The Court dismissed the count requesting an injunction, and the District Court, having jurisdiction over the parties and the subject matter, was free to go to trial on the merits of the count requesting damages.

While Sinclair Refining Co. v. Atkinson, supra, rests on plain language and legislative purpose, the Court said, at page 203, 82 S.Ct. at page 1333:

" * * * § 301 was not intended to have any such partially repealing effect upon such a long-standing, carefully thought out and highly significant part of this country's labor legislation as the Norris-La Guardia Act."

▆▆▆ Though Section 4 specifically applies only to Federal Courts, there was, nevertheless, a clear declaration of congressional policy against enjoining peaceful picketing which we must now follow and apply as part of Federal labor law.[3] The effect of Section 4 was not to authorize State Courts to grant injunctive relief, they already had that power. However, the substantive powers of the States to determine labor law and labor policy in labor disputes arising out of collective bargaining agreements in industries affecting interstate commerce has now been taken away by Federal law.

▆▆▆ Federal Courts are solely responsible for developing a single, consistent body of Federal labor law. The Supreme Court said in Local 174, Teamsters, etc. v. Lucas Flour Co., supra, 369 U.S. page 103, 82 S.Ct. page 576:

"More important, the subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' (Citations omitted). The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate

---

2. Rule 54(c), Rules of Civil Procedure. Demand for Judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

3. An employer may obtain an order directing a Union to comply with its agreement to arbitrate. A strike in the face of such an order could result in contempt proceedings. This alternative remedy is referred to in Sinclair Refining Co. v. Atkinson, supra, page 214 and page 227, Fn. 23, 82 S.Ct. 1328.

and prolong disputes as to its interpretation."

■ If remand is granted, State Courts would become the preferred forum for adjusting breaches of no-strike clauses in collective bargaining agreements in industries affecting interstate commerce. Not only would this undermine a uniform development of the law, but the availability and effectiveness of the injunctive remedy would vary from State to State. Consequently, in order to achieve this uniformity of application the remedies available in State Courts are limited to the remedies available under Federal law.

Avco's claim arises under the laws of the United States, and the complaint states an action over which the District Court had original jurisdiction. Federal labor policy must have uniform application. The Congress has declared that injunctions shall not issue to restrain peaceful picketing.

The judgment of the District Court denying the motion to remand is affirmed.